UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cr-60115-BB-4

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RAYFIELD BELL,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon the Motion for Compassionate Release, ECF No. [146] ("Motion"), submitted by Defendant Rayfield Bell's fiancée, Idella Jones ("Movant"). The Government filed a response in opposition, ECF No. [147] ("Response"), to which no reply was filed. The Court has reviewed the Motion, the Response, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

    **I.**    **BACKGROUND**

On January 25, 2019, Defendant was sentenced to 60 months' imprisonment followed by three years' supervised release and ordered to pay a $20,000.00 fine based on his conviction for conspiracy to possess with intent to distribute at least 50 grams or more of crystal methamphetamine in violation of 21 U.S.C. § 846. ECF No. [131]. He is currently housed at USP Lompoc in Lompac, California.

The Motion requests that Defendant be released from custody due to the current coronavirus ("COVID-19") pandemic and his medical history. ECF No. [147]. Specifically, without attaching any medical records, Movant asserts that Defendant is a 63-year old black male

with high blood pressure, and he previously had a heart attack and a stroke sometime in the past. *Id.* at 1-2. Movant adds that Defendant's housing unit is damp, and Movant asserts that in the past "several people" have died in the prison. *Id.* at 2. Movant claims to have written to the Warden regarding Defendant's conditions but has received "little response." *Id.* at 3. The Government opposes Movant's request. *See* ECF No. [147].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread throughout the world and are impacting every person's life. The United States is currently reporting more confirmed cases of COVID-19 and deaths as a result than any other country, with more than 3,819,000 confirmed cases and over 140,000 reported deaths as of July 21, 2020.[1] The COVID-19 pandemic poses a serious danger to society at large, and especially to at-risk inmates. In addition, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice health precautions available to the general public, such as social distancing.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of institutions and to home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and which should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. In addition, the Attorney General has made an express finding that extant emergency conditions are materially affecting the functioning of the BOP, and directs that the BOP immediately maximize appropriate

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated July 21, 2020).

transfers to home confinement of all appropriate inmates at the specifically named facilities, and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control and Prevention ("CDC") to determine suitability for home confinement, while emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to prevent over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. The Memorandum also stresses the need for careful individualized determinations regarding the propriety of releasing any given inmate and does not encourage indiscriminate release. *Id.* at 3.

## II.   DISCUSSION

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, No. 19-12078, 2020 WL 897402, at *2 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority

3

to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, No. 19-11691, 2020 WL 398708, at *4 (11th Cir. Jan. 23, 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Movant seeks relief under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), which provides:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Under the relevant Sentencing Guidelines policy statement, the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that . . . extraordinary and compelling reasons warrant a reduction." U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018). The

Sentencing Guidelines add that the Court should reduce a sentence only if the "defendant is not a danger to the safety of any other person or to the community." *Id.*

Accordingly,

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, No. 09-60184-CR, 2020 WL 1865771, at *2 (S.D. Fla. Apr. 14, 2020). Thus, in order to grant Movant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

The Motion requests that Defendant be released from custody based on his underlying medical conditions. The Government opposes, arguing that Defendant has failed to exhaust his administrative remedies before the Motion was filed, no medical records have been supplied nor

5

medical diagnoses substantiated, no evidence exists that Defendant suffers from a terminal illness, he has not demonstrated any "extraordinary and compelling reasons" for a sentence reduction, COVID-19 does not justify compassionate release, speculation about possible exposure is insufficient for release, the § 3553(a) factors do not support the requested relief, and the BOP has modified its operating procedures in order to effectively respond to the COVID-19 pandemic and that it has the capacity to properly address any outbreaks among inmates housed in federal facilities. *See generally* ECF No. [147]. Upon review and consideration, the Court agrees that Defendant fails to present circumstances warranting early release.

As an initial matter, the Motion attaches a "Durable Power of Attorney for Financial Matters" dated November 24, 2018 that designates and appoints Movant as his "agent to make decisions for [Defendant] and in [his] name and stead and for [his] use and benefit and to exercise the powers as authorized in this document." ECF No. [147] at 4-6 ("Power of Attorney"). The Power of Attorney confers Movant with "power" concerning Defendant's property, including money, "whether or not [Defendant is] able to act for [himself]." *Id.* at 4. However, it explicitly states that the Power of Attorney does not authorize Movant to make "health care decisions" for Defendant. And, importantly, the document makes no mention about Movant's right to bring a motion for compassionate release on Movant's behalf, which does not facially come within the ambit of "financial matters." Therefore, it appears that Movant does not have standing to bring the Motion, and the Motion can be denied on this basis alone.

Nonetheless, even assuming that the Power of Attorney authorized Movant to file the Motion on Defendant's behalf, the Motion is procedurally improper and substantively deficient. Although Movant claims to have previously written to the Warden sometime in the past and received "little response," the Court has insufficient information to conclude that Defendant has

fully exhausted his administrative remedies with the BOP before the Motion was filed. Additionally, thirty days have not yet lapsed since the Motion was filed on July 2, 2020. Therefore, this alone is a sufficient basis to deny the Motion. Regardless, even if Defendant exhausted his administrative remedies, the Motion fails to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification or that extraordinary and compelling circumstances exist.

The applicable § 3553(a) factors include, among others: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "(2) the need for the sentence imposed — (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). At the time of sentencing, the Court concluded that a term of imprisonment of 60 months was appropriate in this case in light of these § 3553(a) considerations. To date, Defendant has served approximately 18 months of that sentence. Moreover, aside from unsupported references to Defendant's medical conditions, Defendant has not shown further bases to persuade the Court that the sentence imposed should be modified based upon the factors set forth in § 3553(a). *See United States v. Post*, No. 15-cr-80055, 2020 WL 2062185, at *2 (S.D. Fla. Apr. 29, 2020) (noting "that much of the information that [the defendant] provide[d] in his Motion was before the Court at the time of his sentencing," and the Court imposed an appropriate sentence considering this information); *United States v. Zamor*, No. 17-20353-CR, 2020 WL 2062346, at *2 (S.D. Fla. Apr. 29, 2020) ("Crucially, [the defendant] has completed less than 40% of this sentence, and the applicable 18 U.S.C. § 3553(a) factors . . . do not warrant [his] release after serving less than half of his sentence."); *United States v. Rodriguez-Orejuela*, No. 03-cr-20774, 2020 WL 2050434, at

*7 (S.D. Fla. Apr. 28, 2020) (noting that, in weighing the sentencing factors, "the Court's analysis is virtually unchanged from thirteen years ago.").

Regarding the "extraordinary and compelling reasons" test, the Motion presents no evidence that Defendant's circumstances satisfy this element. CDC guidance indicates that individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19: people with moderate to severe asthma, people with chronic lung disease, people with diabetes, people with serious heart conditions, people with chronic kidney disease, people with severe obesity, people with chronic liver disease, people who are immunocompromised, people over the age of sixty five, and people who live in a nursing home or long-term care facility.[2] Neither Defendant nor Movant provided medical documentation or reports concerning his illness, its duration and nature, the severity of his illnesses and lasting effects, and what treatments he is or is not receiving. Further, the Motion does not allege that any such ailment is terminal or that it substantially diminishes Defendant's ability to provide self-care within the correctional facility environment. Relatedly, he is below the age of sixty-five.

The Court is sympathetic to Defendant's health conditions and certainly to Movant's concerns about Defendant's health against the backdrop of COVID-19 outbreaks in prison facilities. However, the BOP website indicates that at USP Lompoc where Defendant is incarcerated, there are only thirteen active cases involving the virus.[3] The Motion does not allege that Defendant has been exposed to any individuals with COVID-19. Nor does the Motion

---

[2] *People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated July 17, 2020).

[3] *COVID-19 Cases*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 22, 2020).

persuade the Court that current procedures in place or resources available at USP Lompoc are insufficient to protect Defendant and other at-risk individuals. Likewise, Movant does not allege that Defendant's health conditions are deteriorating. Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.")); *see also United States v. Kelly*, No. 2:03-cr-126-FtM-29, 2020 WL 2039726, at *1 (M.D. Fla. Apr. 28, 2020) (The "defendant does not allege any extraordinary or compelling circumstances to support compassionate release."). Therefore, Movant has not met the burden of demonstrating that extraordinary and compelling reasons exist to support the request for compassionate release.[4]

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [146]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 22, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

---

[4] Because the Motion fails to establish any extraordinary and compelling circumstances warranting Defendant's release to home confinement, the Court does not need to address the final consideration of whether Defendant poses a danger to the safety of others or to the community under to § 3142(g).

Case No. 18-cr-60115-BB-4

Counsel of record

Idella Jones
6439 Gold Canyon
Las Vegas, NV 891256